UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DERMOT DESMOND,**<br><br>  Plaintiff,<br><br>v.<br><br>**PAUL ELI SIEGEL,** *et al.*,<br><br>  Defendants. | **Civil Action No. 2:10-cv-05562-ES-CLW**<br><br>**OPINION AND ORDER**<br><br>**FILED UNDER SEAL** |

**I.   Introduction**

This matter is before the Court on defendant Paul Eli Siegel's ("Siegel") motion for reconsideration (ECF No. 136) of the Court's orders denying defendants Siegel and Globecon Group Holdings, LLC's ("Defendants") motion to seal (ECF No. 128, 134-35). The Court has carefully considered the relevant submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated below, Siegel's motion is **denied**.

**II.   Background**

The Court presumes the parties' familiarity with the facts underlying this matter and so will not recite them at length here. Briefly, in 2012, the Honorable Dickinson R. Debevoise issued an opinion and order affirming an order of the Honorable Michael A. Shipp granting plaintiff Dermot Desmond's ("Plaintiff") motion to amend his complaint. ECF No. 99 (the "Debevoise Opinion").[1] Plaintiff never filed the proposed amended complaint, and the case resolved by way of consent judgment in 2014. ECF No. 125.[2]

---

[1] Judge Debevoise passed away in 2015.

[2] Of note, the consent judgment provides that "Defendants Siegel and Globecon and their agents shall not directly or indirectly make or disseminate: a) Any statement(s) regarding a supposed theft of intellectual

More than seven years later, Defendants filed their initial sealing motion (ECF No. 128). In it they argued that the public availability of the case docket in general and the Debevoise Opinion in particular had caused Siegel severe personal, social, and economic harm. They requested that the Court "seal[ ] all pleadings, orders, and documents associated with this matter", as well as "preclud[e] all third parties from publishing" such materials. ECF No. 128 at 1. Defendants alternatively requested that only the Debevoise Opinion be so restricted. *Id.*

The Court denied Defendants' motion without prejudice to re-file due to Defendants' failure to comply with Local Civil Rule 5.3(c), which requires that motions to seal: (i) "be made on notice . . . on behalf of all parties"; (ii) be "filed within 14 days following the completed briefing of the materials sought to be sealed"; (iii) contain "an index, substantially in form suggested by Appendix U"; and (iv) contain Proposed Findings of Fact and Conclusions of Law. ECF No. 134 (quoting L. Civ. R. 5.3(c)); *see, e.g.*, *Zaidi v. United States*, 2013 U.S. Dist. LEXIS 179995, at *5 (D.N.J. Dec. 23, 2013) (denying motion to seal without prejudice for failure to comply with Rule 5.3(c)). As to Defendants' request to seal the case docket, the Court also observed that Local Civil Rule 5.3(e) provides that "[n]o docket shall be sealed." ECF No. 135. Defendants did not re-file the motion; instead, Siegel filed a letter requesting reconsideration of the Court's order and a conference to address the sealing motion. ECF No. 136. The Court construes the letter as a motion for reconsideration. That motion is now before the Court.

---

property or any plan to steal property by Plaintiff or Intuition Publishing, Ltd. ("Intuition"), or by their affiliates or agents, from Siegel, Globecon, or any affiliate thereof." ECF No. 125 at 2. In his motion to seal, Defendant writes that Plaintiff "forced a settlement because he knew . . . that he would have to testify about the underlying intellectual property dispute wherein I stated his company had 'stolen' 1000s of pages of our intellectual property". *See* ECF No. 128 at ¶ 17. As Plaintiff has not moved for contempt, the Court will not opine on whether this constitutes a violation of the consent judgment as a matter of law. It will, however, take this opportunity to remind Siegel that the strictures of the consent judgment remain in place.

### III.     Clarification as to the Debevoise Opinion

Before addressing the substance of Siegel's motion, the Court begins with a comment on the Debevoise Opinion. While, as described at length below, the Court finds Defendants' sealing requests to be without merit, the Court is not entirely unsympathetic to Siegel's complaints about the Debevoise Opinion. To be sure, a comprehensive and careful read of the opinion does make clear that the proposed allegations discussed therein are just that — allegations. The very first page states that the opinion concerns Plaintiff's filing of "a Motion to Amend the Complaint, along with a proposed Amended Complaint". Debevoise Opinion at 2. Perhaps most importantly, the section of the opinion entitled "Background" (*i.e.*, the portion that summarizes the allegations in the proposed amended complaint, and with which Defendants primarily take issue), cites extensively to the amended complaint and states that the discussion is culled from the proposed pleading: nearly every sentence is followed by a citation to a specific paragraph in the proposed amended complaint.[3] *See id.* at 2-11. Judge Debevoise then concludes that Judge Shipp granted the motion to amend "[based] on the aforementioned ***allegations***". *Id.* at 11 (emphasis added). It is thus clear to a careful reader that the Debevoise Opinion describes Plaintiff's proposed allegations and nothing more.

The problem, the Court recognizes, is that not all readers are so careful. Taken out of context, the allegations summarized in the Debevoise Opinion could plausibly be read as established facts. The Court will therefore clarify for the record that the proposed allegations described in the Debevoise Opinion are just that — allegations — and accordingly, were never established as fact through discovery (in fact, Plaintiff never filed the proposed amended

---

[3] This rebuts Defendants' contention that the Debevoise Opinion "does not have the simplest of designations by Judge Debevoise that the statements he repeated are 'allegations of the Plaintiff.'" ECF No. 128 at ¶ 19. To the contrary, the opinion is littered with such designations.

complaint). As stated by the Third Circuit, "[s]tatements made in a complaint . . . are merely allegations and not evidence." *Williams v. Pa. Dep't. of Corr.*, 289 F. App'x 483, 484 (3d Cir. 2008) (citing *Fed. Deposit Ins. Corp. v. Deglau*, 207 F.3d 153, 172 (3d Cir. 2000)). This is true of the proposed amended complaint itself, as well as the Debevoise Opinion's discussion thereof.

As stated by Judge Shipp in granting Plaintiff's motion to amend,

> [t]he Court is not persuaded that Plaintiff's factual allegations are particularly strong. However, the Court's function is not to weigh the overall strength of the factual allegations. Rather, the Court must take all of the factual allegations in Plaintiff's proposed amended complaint as true and draw all of the reasonable inferences in favor of Plaintiff. . . . [C]onsidering RICO's "exceptionally broad" reach and the Third Circuit's "particularly liberal approach in favor of permitting pleading amendments," the Undersigned finds that Plaintiff's claim is sufficiently well-grounded that it is not a frivolous pursuit.

ECF No. 76 at 6-7. Being that Judge Debevoise's opinion and order affirmed Judge Shipp's conclusions, they cannot be said to make, and should not be taken as, a statement on the veracity of the proposed allegations discussed in the opinion, which, to reiterate the point, were never established through discovery or otherwise.

Having clarified this point, the Court now proceeds to Siegel's sealing and reconsideration requests.

## IV.    Legal Standard

On a motion for reconsideration, a movant must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Although not expressly stated, Siegel's motion appears to invoke the third route to reconsideration.

## V. Analysis

### a. Request to Seal the Case Docket

The Court will briefly address Siegel's request to seal the entire case docket. As noted, this is simply impermissible under Local Civil Rule 5.3(e), which provides that "[n]o docket shall be sealed." This request is therefore denied.

### b. Request to Seal the Debevoise Opinion[4]

#### i. Rule 5.3(c)

As noted, the Court invited Defendants to re-file their motion to comply with Local Civil Rule 5.3(c). Instead of doing so, Siegel requested reconsideration and argued that Defendants' original motion did indeed comply with Rule 5.3(c). The Court disagrees.

As to the rule's notice requirement, Siegel argues that although Defendants' motion was intended to be filed *ex parte*, Plaintiff did learn of it due to (according to Siegel) a Clerk's Office error. This fails to satisfy the rule, which requires that motions to seal "be *made* on notice". Moreover, Rule 5.3 expressly states that "[a]ny motion and supporting papers to seal or otherwise restrict public access shall be available for review by the public." L. R. 5.3(c)(1).[5]

---

[4] While Siegel's motion leaves room for the Court to seal less than the entire case docket but more than the Debevoise Opinion, the original sealing motion expressly requested (in the alternative) these two forms of relief. *See* ECF No. 128 at 1. Moreover, nearly all of Siegel's substantive arguments go to the latter. And to the extent Siegel seeks, for example, to have the underlying allegations in the proposed amended complaint sealed, this cannot be countenanced. As aptly stated in *Dombrowski v. Bell Atl. Corp.*, 128 F. Supp. 2d 216 (E.D. Pa. 2000), "pleadings are filed every day with allegations that may embarrass the opposing party. If mere embarrassment were enough, countless pleadings as well as other judicial records would be kept from public view. We will not travel down this road." *Id.* at 219. Accordingly, the remainder of this opinion addresses Siegel's request to seal just the Debevoise Opinion.

[5] The Court also notes that while Defendants cite a single out-of-context passage from a treatise to justify their *ex parte* filings, it is settled that "*ex parte* proceedings are disfavored in this Circuit." *United States v. Ellis*, 2020 U.S. Dist. LEXIS 197277, at *1 (W.D. Pa. Oct. 23, 2020). As stated in *Leone v. Towanda Borough*, 2012 U.S. Dist. LEXIS 47594 (M.D. Pa. Apr. 4, 2012),

> *[e]x parte* motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. . . . To

Concerning the 14-day deadline, Siegel writes that he "only recently learned that these bizarre, unsubstantiated, and lie-filled documents were circulating on the internet and continuing to do me harm" and that he "took swift action when [he] learned of this and contacted the Court the moment that [he] realized this was the case." ECF No. 136 at 2. This argument fails for two reasons. First, Rule 5.3 does not include a discovery rule analogue that permits its deadline to be tolled if a party only later learns of the need to seal a document. Even if Siegel's timeline supported this argument, therefore, it still would fail.

What is more, the suggested timeline is simply incorrect. Defendants' motion describes, for example, Siegel learning of the Debevoise Opinion being transmitted to the press in 2015; harm caused to him "immediately upon issuance" of the Debevoise Opinion; and a series of other unfortunate events befalling him several years before the filing of his sealing motion. ECF No. 128 at, *e.g.*, ¶¶ 15, 36. This chronology undercuts the notion that the opinion's circulation "only recently" harmed Siegel. Contrary to Siegel's statement that he did not slumber on his rights, the fact that Defendants moved to seal in 2021, nearly a decade after the Debevoise Opinion and several years after these various alleged harms occurred, demonstrates a failure to act in an expeditious manner.

---

> justify *ex parte* relief, . . . [f]irst, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect . . . .

*Id.* at *7 (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490-92 (C.D. Cal. 1995)). The Court will not belabor the point beyond stating that Defendants' motion fails to satisfy this standard and was improperly submitted as an *ex parte* application. The Court also notes that, because at least Defendants' initial motion has been made available to Plaintiff, the Court will address Defendants' applications in full view of the parties.

Siegel also argues that the 14-day deadline should not apply because here, there is no "completed briefing of the materials sought to be sealed." This is because this is a fairly uncommon case where a party has demanded that a court's opinion — as opposed to a party's submission to the court — be placed under seal. Nonetheless, this does not salvage Siegel's application. Being that Defendants invoked Rule 5.3(c) to support their application, it stands to reason that the Rule's 14-day timeline should apply equally to (and run from the filing of) materials filed by the court. Defendants cannot have it both ways — move under Rule 5.3(c) but also say the rule's strictures are inapplicable. And irrespective of Rule 5.3(c), as detailed above, Defendants plainly did "slumber on [their] rights" by waiting several years after suffering alleged harm from the Debevoise Opinion before moving to seal it.

Next, the Court observed that Defendants failed to submit an index or proposed findings of fact and conclusions of law. As to the first item, Siegel says that Defendants' "motion is not a hodgepodge and disorganized document, but a very thorough and thoughtful delineation of the issues. The 'index' sought can readily be gleaned from the information I supplied." ECF No. 136 at 2. But the Rule does not call for materials to be thorough and well organized. It calls for an index, and Defendants failed to provide one. The same is true as to the rule's final item, as to which Siegel claims Defendants "clearly detail both Findings of Fact and Conclusions of Law". *Id.* (quotation marks removed). Again, this is simply not so. There are no portions of the motion setting forth either proposed findings of fact or conclusions of law. That the motion sets forth factual and legal propositions does not amount to compliance with Rule 5.3(c).[6]

---

[6] An additional ground for denial under Rule 5.3(c) is that Defendants did not confer with Plaintiff "in an effort to narrow or eliminate the materials or information that may be the subject of a motion to seal", within 21 days of the Debevoise Opinion. Rule 5.3(c)(2)(i).

For these reasons, the Court finds no basis to reconsider its original orders. Although this procedural ground suffices to dispense with the present motion, the Court finds it proper to address the merits of Defendants' sealing requests.

### ii. **Common Law Right of Access**

There exists a well-entrenched common law right of public access to materials such as the Debevoise Opinion. Indeed, "the common law right of public access to judicial documents is said to predate even the Constitution itself." *United States v. Erie Cty.*, 763 F.3d 235, 239 (2d Cir. 2014) (citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). "[T]he common law right of access begins with a thumb on the scale in favor of openness — the strong presumption of public access." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 676 (3d Cir. 2019); *see also Lowenschuss v. West Pub. Co.*, 542 F.2d 180, 185 (3d Cir. 1976) ("As ours is a common-law system based on the 'directive force' of precedents, its effective and efficient functioning demands wide dissemination of judicial decisions.").

This right of access plainly attaches to judicial records such as the Debevoise Opinion. "A 'judicial record' is a document that has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings. Once a document becomes a judicial record, a [common law] presumption of access attaches." *Avandia*, 924 F.3d at 672 (quoting *In re Cendant Corp.*, 260 F.3d 183, 192-93 (3d Cir. 2001) (cleaned up)). Because "[n]othing could be more of a 'judicial document' than a reasoned opinion issued by a court", *Alexsam, Inc. v. Mastercard Int'l*, 2017 U.S. Dist. LEXIS 229468, at *5 (E.D.N.Y. Mar. 13, 2017), it follows that the common law right of access applies to the Debevoise Opinion. *See e, g.*, *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 U.S. Dist. LEXIS 141475, at *9 (D. Del. Aug. 7, 2020) ("For a document that directly affect[s] an adjudication of the parties' substantive rights—like a

judicial opinion itself—there is a strong presumption of access, and the document should not be placed under seal absent the most compelling reasons.") (quoting *McDonough v. Nassau County Bd. Of Co-operative. Educational Servs.*, 2008 U.S. Dist. LEXIS 110933, at *2-3 (E.D.N.Y. Feb. 29, 2008) (cleaned up)); *see also* cases collected in *Lipocine*, at *8-9 (supporting the notion that presumption of access to judicial opinions is particularly robust); *see generally United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685 (5th Cir. 2010) (addressing motion to seal judicial opinion under common law right of access); *Ganski v. Wolff*, 2014 U.S. Dist. LEXIS 137942 (E.D. Pa. Sep. 30, 2014) (same).

A "party seeking to overcome the [common law] presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption. The movant must show that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F.3d at 672 (citing cases) (cleaned up). "In delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* at 673 (quoting *In re Cendant Corp.*, 260 F.3d at 194).[7]

Siegel fails to meet this heavy burden. First, concerning the question of whether the Debevoise Opinion contains "the kind of information that courts will protect", the answer appears to be an emphatic no. *See* cases cited *supra*; *e.g.*, *United States v. McCoullum*, 2013 U.S. Dist.

---

[7] Of note, this is a "more rigorous" standard than that articulated in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), which applies to questions of confidentiality of discovery materials under Rule 26. "[T]he *Pansy* factors are not sufficiently robust for assessing the public's right to access judicial records." *Avandia* at 670, 676. The distinction is particularly significant here because "[o]ne of the *Pansy* factors assesses whether disclosure of the information will cause a party embarrassment. But [the Third Circuit has] repeatedly said that concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access." *Id.* at 676 (quoting *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (cleaned up)).

LEXIS 100280, at *2 (D. Me. July 18, 2013) (denying motion to seal judicial opinion in view of "the long-recognized public interest in the accurate reporting and dissemination of judicial decisions") (citing, *e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The special protected nature of accurate reports of judicial proceedings has repeatedly been recognized.")). Additionally, the Debevoise Opinion is already in the public realm (and has been for several years). Such already-public information "is not the sort of information that justifies stripping the public of its right to access". *Jewitt v. IDT Corp.*, 2004 U.S. Dist. LEXIS 32639, at *9 (D.N.J. Aug. 6, 2004). And to the extent Defendants complain that the Debevoise Opinion is defamatory (a contention with which the Court disagrees, as discussed above), the Third Circuit holds that "a judge is absolutely privileged to publish even defamatory statements in his judicial opinions, so long as 'the publication has some relation to the matter before him.'" *Lowenschuss v. W. Publ'g Co.*, 542 F.2d 180, 185 (3d Cir. 1976) (quoting Restatement of Torts § 585 (1936)). Thus, even a finding that the opinion is defamatory (which it is not) would not render it worthy of special treatment. In short, the Debevoise Opinion is not the type of material that courts generally seek to protect.

Siegel's argument also falters on the "clearly defined and serious injury" prong. First, his discussion of his claimed injuries largely consists of "[b]road allegations of harm, bereft of specific examples or articulated reasoning". *Avandia*, *supra*; *see, e.g.*, ECF No. 128 at ¶ 16 (public information "[c]aused and continues to cause interference with my ability to earn a living"); *id.* at ¶ 45 (continued publication "could lead to unwanted contact and potential harassment"). And to the extent Siegel provides details and examples, these almost all speak to the harms he *has* suffered due to issues raised in the motion. *See, e.g.*, ECF No. 128-1 at ¶¶ 39-45 (describing events occurring in 2012 through 2016). But Siegel does little to establish the risk of injury that

"disclosure *will* work". *Avandia*, 924 F.3d at 672 (emphasis added). No amount of past harm can constitute injury that will occur in the future if the Debevoise Opinion is not sealed.

There are two areas where Siegel comes closer. First is regarding his children, whom he says he has not spoken to in eight years due to the Debevoise Opinion. ECF No. 128 at ¶ 36, ECF No. 128-1 at ¶ 40. While the Court empathizes with Siegel as to this unfortunate circumstance, the argument still fails to meet the standard. Even accepting as true the notion that the Debevoise Opinion is the sole catalyst for these issues, it appears that it is not the availability of the Debevoise Opinion itself but instead how third parties have allegedly wielded it (a circumstance which this Court has no authority to control) that has caused this harm.

Second is Siegel's statement that "various major venture capital investors" had considered investing in Siegel's company Starweaver, but had declined due to hearing or reading negative things about Siegel or the company (*i.e.* the Debevoise Opinion or other litigation documents). Siegel says that "[b]ecause of the fast growth of Starweaver and the highly competitive market in which it operates, it is now essential for [Siegel] to raise capital to fund the Starweaver business. However, the factually false and defamatory Desmond Litigation Documents and Debevoise Opinion hinder if not destroy Starweaver's (and my) ability to raise money . . . ." ECF No. 128-1 at 36.

This does not suffice. Initially, Siegel's reference to "various major venture capital investors" and his general comments as to Starweaver's "fast growth" in a "highly competitive market" are, first and as above, examples of "[b]road allegations of harm, bereft of specific examples or articulated reasoning"; and second, archetypes for "concern[s] about a company's public image, embarrassment, or reputational injury", which likewise are insufficient under the present analysis. *See Avandia*, *supra* and at 676; ; *Kamakana v. City & Cty. of Honolulu*, 447 F.3d

1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment . . . will not, without more, compel the court to seal its records.") (citing *Foltz v. State Farm Mutual Auto Insurance Company*, 331 F.3d 1122, 1136 (9th Cir. 2003)); *e.g.*, *Keating v. Jastremski*, 2020 U.S. Dist. LEXIS 62754, at *6 (S.D. Cal. Apr. 9, 2020) ("The Keating Group's argument that the discussion of their involvement prejudices their business reputation is insufficient to meet the compelling reasons standard."); *Nelson v. Nissan N. Am., Inc.*, 2014 U.S. Dist. LEXIS 200305, at *15 (D.N.J. Dec. 22, 2014) (citing *Securimetrics, Inc. v. Iridian Techs., Inc.*, 2006 U.S. Dist. LEXIS 22297, at *14-15 (D.N.J. Mar. 30, 2006) for the notion that "broad allegations that an entity's competitive standing would be harmed are insufficient to overcome the presumptive right of public access"). Moreover, Siegel provides no credible evidence demonstrating the claimed risks to Defendants' business or lost opportunities for funding. *See, e.g.*, *Salud Servs. v. Caterpillar, Inc. (In re Caterpillar Inc.)*, 2015 U.S. Dist. LEXIS 185622, at *20-21 (D.N.J. Jan. 28, 2015) (argument that information to be sealed is of a "highly sensitive business nature, the disclosure of which can impact Caterpillar's relationships with its customers and dealers and could provide information that Caterpillar's competitors can use to the detriment of Caterpillar" amounted to "broad and conclusory statements" and lack of "competent evidence" sufficient to sustain burden to seal).

The court's analysis in *Ganski* is useful here.[8] As in this case, the *Ganski* plaintiffs were "concerned about the availability of the [court's] Decision on websites or search engines maintained by entities such as the United States District Court for the Eastern District of Pennsylvania . . . and other third party legal information providers" and therefore sought to have

---

[8] Of note, *Ganski* applied the *Pansy* factors, which, as noted above, the Third Circuit later clarified provide too lenient a standard for the present question. Nonetheless, the Court may extrapolate *a fortiori* from *Ganski*'s analysis.

12

the decision sealed or redacted. *Id.* at *3. They claimed that information in the decision constituted "defamatory material" and "false injurious and libelous statements", harmed the individual plaintiff's reputation, and made him unable to secure employment or "live in the city of his birth and interact among his professional and social colleagues". *Id.* at *5-11. The court denied the motion, writing that

> plaintiffs do not provide specific support for these claimed injuries. In *Glenmede* [*Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)], the court found that plaintiff's "general allegations of injury to reputation" insufficient to support a finding of good cause. Plaintiff Bernard Ganski's broad claim of damage to his reputation is not a "clearly defined or serious injury" as required to show good cause.

*Id.* at *8 (citing *Rossi v. Schlarbaum*, 2008 U.S. Dist. LEXIS 5812, at *7 (E.D. Pa. Jan. 25, 2008), where the court refused to seal record without demonstration of "clearly defined and serious injury" to party); *see also Glenmede*, 56 F.3d at 484 (where movant argued adversary wished to publicize statements "to maximize the embarrassment and potential economic damage which such averments could generate to those institutions' relationships with their clients and the public", court denied sealing request, writing that "[g]eneral allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents is insufficient to justify judicial endorsement of an umbrella confidentiality agreement"); *Anderson v. Miss. Baptist Med. Ctr.*, 2017 U.S. Dist. LEXIS 42396 (S.D. Miss. Mar. 23, 2017), at *4 (where plaintiff complained that her "old case against my former employer has been put on Google public search engine and become something everyone can see. It has greatly affect [sic] my life. I can no longer function normally to care for my patients because of this. They put my reputation, my life, and my career to [sic] jeopardy", court held these "complaints regarding the perceived

consequences of her lawsuit do not constitute compelling reasons to seal the record") (citing

*Macias v. Aaron Rents, Inc.*, 288 Fed. Appx. 913, 915 (5th Cir. 2008)).

In summary, the Court finds that the overwhelming weight of authority counsels against a

finding that Defendant has overcome the common law right of access to the Debevoise Opinion.[9]

### iii.  **Mandatory Injunctive Relief**

As Siegel acknowledges, the Debevoise Opinion is widely available online and seems to

have been for some time. *See, e.g.*, ECF No. 128 at ¶ 19. It thus appears that the primary purported

harm to Siegel is not in the Debevoise Opinion being retrieved from the Court's docket, but instead

being viewed on more mainstream channels. To this end and as noted, Defendants have requested

not only that the Court seal the case docket, but that it also "preclud[e] all third parties from

publishing the Desmond Litigation Documents [or alternatively, just the Debevoise Opinion] in

---

[9] In addition to the common law right, the First Amendment right to access likewise attaches to the Debevoise Opinion. As written by the Third Circuit,

> [w]hat a judge says in an opinion is sufficiently expressive to trigger First Amendment review. The judge "inten[ds] to convey a particularized message" by explaining his legal analysis and conclusions, and there is a "great" likelihood that the opinion's message would be understood by its audience — no less than if the judge had published the same analysis and commentary in a law review article. Indeed, as pure speech on public issues, a judicial opinion "occupies the highest rung of the hierarchy of First Amendment values" and is thus "entitled to special protection."

*In re Kendall*, 712 F.3d 814, 824 (3d Cir. 2013) (citing cases) (cleaned up).

"While the principles of the common law right overlap with the First Amendment right to access, . . . the Court recognizes that a determination based on common law, rather than constitutional, grounds is preferable." *United States v. Konrad*, 2011 U.S. Dist. LEXIS 43206, at *19 n.4 (E.D. Pa. Apr. 19, 2011) (citing cases). The Court therefore declines to conduct a full First Amendment analysis. It notes, however, that "[t]he First Amendment right of access requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." *In re Cendant*, 260 F.3d at 198 n.13. *A fortiori*, Defendants' failure to overcome the common law right to access means the same result must follow as to the First Amendment right. *See id.* (declining to reach First Amendment right of access because the "District Court's confidentiality order did not satisfy the requirements for abridging even the common law right of access") (citing *Hagans v. Lavine*, 415 U.S. 528, 547 (1974)).

print or online." ECF No. 128 at 1. Therefore, to truly provide Defendants with the relief they seek, the Court would need to order all third parties who have published the Debevoise Opinion to delete such publications.[10] This amounts to a request for mandatory injunctive relief. *See, e.g.*, *Advanced Oral Techs., L.L.C. v. Nutrex Research, Inc.*, 2011 U.S. Dist. LEXIS 475, at *6-7 (D.N.J. Jan. 3, 2011) ("A mandatory injunction . . . is said to alter the status quo by commanding some positive act . . . .") (quoting *Tom Doherty Assocs. V. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). Under this rubric as well,[11] Defendants' request must be denied.

A party seeking an injunction "must make a sufficient showing that (1) it will suffer irreparable injury [absent an injunction], (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). "While courts consider the above-referenced "factors holistically, the inability to show irreparable harm . . . defeats a request for injunctive relief." *Id.* (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). Because of the nature of Defendants' request, this standard is coupled here with that governing mandatory injunctions. "[A] mandatory injunction is an extraordinary remedy that is only granted sparingly by the courts." *Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (citing, *e.g.*, *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972) (noting that a mandatory

---

[10] The Court would also need to prohibit such publication going forward; however, this appears a somewhat less pressing concern for a document first published nearly a decade ago. It likely would also constitute a highly problematic prior restraint on speech.

[11] To be clear, this standard does not supplant that set forth above, as Siegel indisputably needs to demonstrate that his concerns outstrip the common law (and First Amendment) right to access to justify restraint on public access to the Debevoise Opinion. This discussion provides an additional framework under which to assess Siegel's far-reaching sealing request.

injunction is an "extraordinary remedy [to] be employed only in the most unusual case")). Indeed, "mandatory injunctions are 'particularly disfavored,' and a plaintiff's burden is 'doubly demanding' when seeking one." *Progressive Democrats for Soc. Justice v. Bonta*, 2021 U.S. Dist. LEXIS 250746, at *8 (N.D. Cal. July 16, 2021) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).

For reasons similar to those discussed above, Defendants are unable to meet this standard. A "movant is required to establish not a mere *possibility* of irreparable harm, but that it is '*likely* to suffer irreparable harm if equitable relief is denied.'" *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 581 (S.D.N.Y. 2002) (quoting *Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990)); *see also Molina v. Kauffman*, 2021 U.S. Dist. LEXIS 109044 (M.D. Pa. June 8, 2021), at *3-4 (injunctive relief "may not be used simply to eliminate a possibility of a remote future injury. [T]he irreparable harm must be actual and imminent, not merely speculative. [M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury, or a presently existing actual threat . . . . A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction[12] is to prevent future irreparable harm.") (quoting various cases). The Court's discussion, *supra*, of Siegel's presentation of broad, unsubstantiated, reputational, and future forms of harm applies with equal force under this framework. *See, e.g.*, *Viamedia, Inc. v. WideOpenWest Fin., LLC*, 2020 U.S. Dist. LEXIS 109258, at *7 (S.D.N.Y. June 22, 2020) ("[T]he loss of potential investors does not justify injunctive relief.") (citing *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.

---

[12] "There is no significant difference between the standards for a preliminary injunction and a permanent injunction." *Brandt v. Burwell*, 43 F. Supp. 3d 462, 483 (W.D. Pa. 2014) (citing *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987)).

1999)). Moreover, Siegel "has proffered neither expert testimony nor any data, that would tend to substantiate the likelihood of irreparable harm if [his] request for injunctive relief is denied". *Potts NH RE, LLC v. Northgate Classics, LLC*, 2012 U.S. Dist. LEXIS 75165, at *30 (D.N.H. May 10, 2012) (quoting *Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 42 (1st Cir. 2010)); *contra Motorola, Inc. v. Alexander Mfg. Co.*, 786 F. Supp. 808, 814 (N.D. Iowa 1991) (irreparable injury demonstrated where "Plaintiff presented testimony that it is losing investment opportunity").

Finally, "entering an injunction against a non-party . . . is forbidden". *Additive Controls & Measurement Sys. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996). The only time this may be done is when the targets of the injunction are "other persons who are in active concert or participation" with parties to the case (or their agents). FED. R. CIV. P. 65(d)(2). Third party websites like LexisNexis, Westlaw, Google, etc. plainly fall outside this category.[13]

In sum, to the extent Defendants seek mandatory injunctive relief, that request must be denied.[14]

## VI. Conclusion and Order

For the reasons stated, defendant Paul Eli Siegel's motion for reconsideration and/or for a telephone conference (ECF No. 136) is **denied**.

Dated: July 5, 2022

/s/ Cathy L. Waldor
Cathy L. Waldor, U.S.M.J.

---

[13] It also is settled that a "permanent injunction is not available through *ex parte* procedure." *United States v. Crusco*, 464 F.2d 1060, 1062 (3d Cir. 1972).

[14] Being that the Court finds Defendants' applications without merit through the numerous rubrics described above, the Court will deny the request for a telephone conference to address these matters.